## THE SAVOY.

### WHEELER et al. v. THE SAVOY.

(District Court, D. Connecticut. September 1, 1898.)

SEAMEN—LIBEL FOR WAGES—EVIDENCE.

Where the employment of libelants by the owner of a vessel, as testified to by them, is inherently improbable, and the appearance and demeanor of the libelants' witnesses prevent belief in their testimony, a libel for alleged wages will not be sustained.

This is a libel by a seaman for wages.

Stiles Judson, Jr., for claimant.
Howard H. Knapp, for libelant.

SHIPMAN, Circuit Judge, acting during disability of district judge. This libel in rem against the sloop Savoy, to enforce an alleged lien for seamen's wages, averred that the libelants, Charles E. Wheeler, Lewis Nordaby, and Charles Tobias, were seamen on board said sloop in and about Long Island Sound, of which vessel James E. Miller was the managing owner; that Wheeler was employed from April 13, 1897. to September 25, 1897, at $60 per month, and earned $304, of which he has received only $10; that Nordaby was employed from September 7, 1896, to May 24, 1897, at $12 per week; that there is still due to him $174, and that there is a balance of $55 due to Tobias. No testimony was offered in favor of the Tobias claim. The libel was filed June 15, 1898. Annie Golati, who alleges that she is the owner and holder of a mortgage upon said sloop to secure the sum of $500 given by James E. Miller on September 19, 1896, and upon which the sum of $400, with accrued interest, is still due, appeared as claimant, and denied the truth of the allegations of the libel. During all the time in which the services of the libelants were rendered, James E. Miller, a clerk in a grocery store in Bridgeport, Conn., and a man of very moderate means, owned the Savoy, a sloop of 11.60 tons, and which was built to be used for the dredging of oysters. Wheeler is a person who dredges for oysters during the oyster season, and during the rest of the time is employed in services of one kind and another in the vicinity of the wharves and waters of Bridgeport and Stratford. His story, in which he is supported by Miller, is that in the spring of 1897 he was employed, by verbal agreement with Miller, to take charge of the boat and manage it, as sailing master only, and not as captain or master. for $60 per month. Wheeler says that from April 23, 1897, he was occupied for one month in rigging up the sloop, putting on a false deck, and fitting her out to dredge for oysters; that he dredged during the next month, when she went upon the ways for about a month, where she was being fitted to take out sailing parties; that she began about July 23d to take out sailing parties, and took out a few to different points, until the first week in September; that afterwards she dredged for about 10 days, until she was capsized and sunk in the Housatonic river, on September 20th. It is true that the boat was being repaired at the ship yard of Berdell, in Stratford, for about three weeks from June 15 to July 5, 1897. Wheeler has no written

89 F.—7

account of any sort to support his statement. In November or December, 1897, Miller says that he sold the sloop to one Palmer, and since the libel has informed him of the process against her, who has not appeared as a claimant or to defend against these alleged liens.

Without clear proof in favor of the story of Wheeler, it would seem most improbable that a clerk of very limited means should employ an oyster dredger and loiterer about the wharves, to manage his boat, at $60 per month throughout the season, as well when she was undergoing repairs as when she was earning money. But the appearance and demeanor of Wheeler and Miller upon the witness stand prevent belief in their testimony. The fact, in all probability, was that Wheeler was employed to care for and manage the boat upon shares. Witnesses testify to admissions to this effect from Wheeler, and, although I ordinarily place little reliance upon reported conversations of this character, yet the entirely inadequate character of the testimony for the libelant, in connection with his inaction and indifference in regard to the payment of a bill, which, if it existed, was of importance to him, lead me to the conclusion that his agreement with Miller must have been to run the boat upon shares, and that the account has been settled.

Nordaby, who is a painter, says that he performed service as an oyster dredger on the sloop from September 14, 1896, to October 4th; and as a sailor from October 4 to October 29, 1896, when the boat was carrying vegetables; and from the latter part of March, 1897, to May 24, 1897, in painting and scraping the boat preliminary to the dredging season,—all at the rate of $12 per week. It is to be remembered that while he was dredging he went home regularly in the evening, and that during stormy days, or days when he did not work, he was about his home. The story of Nordaby, like that of Wheeler, is unworthy of credit. His manner and demeanor as a witness also prevent belief in his testimony. His account book is unsatisfactory. The opposing testimony commands confidence, and the truth undoubtedly was that from September 14, 1896, until October 4th, he was to be paid at the rate of $2 per day for each working day; that he worked 13 days, and was fully paid; that from October 4 to October 29, 1896, he worked as a sailor in the transportation of vegetables upon shares; and that the amount due him was fully settled and paid. He says that he worked as a painter in repairs on the boat for two months in the spring of 1897, also at $12 per week. His book shows that he received during this period $22. Nordaby's testimony that he was either occupied or was employed eight weeks in the spring of 1897, upon painting and scraping the boat, at $12 per week, I do not believe. His book indicates that he received $22 for his services during this time, and if that is true I cannot find that anything is due him.

The entire case leads me to the conclusion that these three witnesses deceived their counsel, and that the undisclosed scheme of Miller was to pile up alleged maritime liens upon the boat to such an amount that the mortgage of the claimant should disappear upon a sale of the vessel by the marshal under a decree of court. The libel is dismissed, with costs of this court.